IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| ASHLEY HUDDLESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:22-cv-00718 |
| | ) | |
| SPRINGFIELD HEALTH SERVICES, | ) | JUDGE CAMPBELL |
| LLC d/b/a TRISTAR NORTHCREST | ) | MAGISTRATE JUDGE HOLMES |
| MEDICAL CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court are Defendants' motion to exclude testimony of Plaintiff's expert Steven Stogner, M.D. (Doc. No. 79) and Plaintiff's motion to exclude testimony from Defendants' expert witnesses (Doc. No. 82). The motions are briefed and ripe for review. (*See* Doc. Nos. 90, 85, 97). For the reasons discussed below, the motions will be **DENIED**.

### I. BACKGROUND

This is a medical negligence/health care liability case arising from medical care Plaintiff received at TriStar Northcrest Hospital (the "Hospital") in Springfield, Tennessee in December 2021. Plaintiff was born with a genetic condition called muscular dystrophy, which required her to be in a wheelchair and utilize a tracheostomy since age 11.

On December 25, 2021, at around 2:36 p.m., Plaintiff presented to the Hospital with low oxygen, shortness of breath, and a history of muscular dystrophy requiring tracheostomy. Approximately an hour later, Plaintiff had a chest x-ray taken, which was normal. At some point, Plaintiff complained of low back pain. A physician's assistant in the emergency room, Defendant Samantha Stephens, ordered and administered 0.5 milligrams of Dilaudid to Plaintiff for her back

pain. Five minutes later, Plaintiff was in cardiac arrest and CPR was initiated. Emergency room physician and supervising physician of Stephens, Defendant James Nell, ordered Narcan, and Plaintiff was alert soon thereafter.

Chest x-rays taken after Plaintiff received CPR showed a pneumothorax (collapsed lung). Plaintiff had a chest tube inserted and was flown by helicopter to St. Thomas Hospital, where she stayed until January 22, 2022. She was transferred to a different hospital, where she stayed until March 3, 2022, after which she received treatment at home until April 4, 2022.

Plaintiff brings this case against Defendants Samantha Stephens, P.A., and James Nell, M.D. under Tennessee Code Annotated Section 29-26-115 for their alleged negligence in providing her medical care on December 25, 2021. (Doc. No. 1).[1] Specifically, Plaintiff claims Defendants negligently ordered and administered Dilaudid, which proximately caused her respiratory arrest, cardiac arrest and subsequent pneumothorax, pain/suffering, and long-term hospitalization.

## II. STANDARD OF REVIEW

State law determines expert witness competency in health care liability cases, and federal law determines whether a witness is qualified to testify as an expert. *See Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002). "Thus, if a witness is deemed competent to testify to the substantive issue in the case, such as the standard of care, his or her testimony should then be screened by Rule 702 to determine if it is otherwise admissible expert testimony." *Id*. at 292.

---

[1] Defendants Springfield Health Services, LLC d/b/a TriStar Northcrest Medical Center, Kimberly Rice, APRN, and Rebekah Kollar, M.D. were dismissed from this action in 2024. (*See* Doc. Nos. 46, 48).

### III. LAW

**A. Competency under Tennessee Law**

Subsection (b) of Tennessee Code Annotated Section 29–26–115 prescribes who is competent to testify as an expert in a health care liability action:

> No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115(b); *Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011) ("when determining whether a witness is competent to testify, the trial court should look to subsection (b), not subsection (a)."). Although subsection (b) requires that the medical expert be licensed in a profession or specialty which makes the testimony relevant in malpractice action, there is no requirement that the expert be licensed in the same profession or specialty as the defendant. *Stanfield v. Neblett*, 339 S.W.3d 22, 36–37 (Tenn. Ct. App. 2010).

**B. Qualifications under Rule 702 and *Daubert***

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 453 (6th Cir. 2013) (quotation omitted). The Court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert* to nonscientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application" are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149.

However, the court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn. 2017) (quoting *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012)). "Indeed, rejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never intended to serve as a replacement for the adversary system." *Id.* (internal quotation marks and citation omitted). Rule 702 does not "require anything approaching absolute certainty." *Tamaraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) (citing *Daubert*, 509 U.S. at 590). Under *Daubert*, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion

has a reliable basis in the knowledge and experience of the discipline." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 592).

## IV. ANALYSIS

The Court will first consider competency challenges before turning to whether a witness is qualified to testify as an expert under Federal Rule of Evidence 702 and *Daubert*.

### A. Competency under Tennessee Code Annotated Section 29–26–115(b)

Defendants challenge Dr. Stogner's competency to testify in this case on the grounds that he "is a pulmonologist and not an emergency medicine physician or physician's assistant like the Defendants." (Doc. No. 80 at 1). In support, Defendants contend that "the issue" in this case was "administering pain medication for Plaintiff's musculoskeletal [back] pain" and that Dr. Stogner does not treat patients for "trauma such as this." (*Id*. at 7).

In her response, Plaintiff correctly notes that there is no requirement that Dr. Stogner be licensed in the same profession or specialty as the defendants. (*Id*. (citing *Stanfield v. Neblett*, 339 S.W. 3d 22, 37 (Tenn. Ct. App. 2010)). Plaintiff argues that Dr. Stogner's testimony is relevant to Defendants' care of Plaintiff and the proximate cause of Plaintiff's alleged injuries because Dr. Stogner is Board Certified in the areas of Internal Medicine, Pulmonary Disease, and Critical Care Medicine and because he works with emergency room physicians on a daily basis, including physician assistants and nurse practitioners, and has experience ordering Dilaudid for patients in the emergency room setting. (*Id*. at 9-10). Defendants do not respond or argue otherwise as they opted not to file a reply in support of their motion to exclude Dr. Stogner's expert testimony.

Tennessee courts have made clear that Section 29-26-115 does not require that an expert witness practice the same specialty as the defendant. *See Shipley v. Williams*, 350 S.W.3d 527, 566-67 (Tenn. 2011) (collecting cases); *Stanfield*, 339 S.W. 3d at 37. Instead, courts must "look

5

carefully at the particular issues presented in the case to determine if an expert practices a profession or specialty that would make the expert's testimony relevant to those issues." *Shipley*, 350 S.W.3d at 556. Upon review of the Complaint and the parties' filings, the Court finds no reason to require all medical expert witnesses in this case be licensed as an emergency medicine physician; this case turns on whether Defendants breached the standard of care in the administration of pain medication as opposed to emergency room-specific standards. To that end, Dr. Stogner's Board Certifications in internal medicine, pulmonary disease, and critical care medicine, and his experience with ordering pain medication in the emergency room setting all demonstrate that he is licensed to practice in a profession or specialty that makes his testimony relevant.

B. **Qualifications under Rule 702 and *Daubert***

Plaintiff and Defendants seek to exclude each other's respective expert witnesses for failure to comply with the "locality requirement" of subsection (a)(1) of Section 29–26–115.[2] As only standard of care opinions are subject to the locality rule, the parties' motions will be denied to the extent they seek to exclude causation opinions based on a failure to comply with subsection (a)(1).

To satisfy this "locality requirement," an expert witness may show either that they are "familiar" with the relevant medical community or that they are familiar with a "similar" medical community:

> A claimant is required to prove the "[t]he recognized standard of acceptable professional practice ... in the community in which the defendant practices or in a similar community." Tenn.Code Ann. § 29–26–115(a)(1). The medical expert or experts used by the

---

[2] The Sixth Circuit considered the interaction between Tennessee's locality rule and Rule 702 in medical negligence/health care liability cases in *Gales on behalf of Ranson v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 91 F.4th 433 (6th Cir. 2024), concluding that "a proffered witness in a Tennessee medical malpractice action who is unfamiliar with the relevant medical standards cannot testify as an expert because his opinion will not help the fact finder determine a fact at issue in the case." 91 F.4th 433, 436.

> claimant to satisfy this requirement must demonstrate some familiarity with the medical community in which the defendant practices, or a similar community, in order for the expert's testimony to be admissible under Rules 702 and 703. Generally, a competent expert's testimony that he or she has reviewed and is familiar with pertinent statistical information such as community size, hospital size, the number and type of medical facilities in the community, and medical services or specialized practices available in the area; has had discussions with other medical providers in the pertinent community or a neighboring one regarding the applicable standard of care relevant to the issues presented; or has visited the community or hospital where the defendant practices, will be sufficient to establish the expert's testimony as admissible.

*Shipley v. Williams*, 350 S.W.3d 527, 554 (Tenn. 2011). Thus, a competent expert may demonstrate familiarity with the medical community in which the defendant practices – here Springfield, Tennessee – or a similar community by:

1. testifying that they have reviewed and become familiar with pertinent information, such as the size of Springfield's community and hospital, the number and type of medical facilities in Springfield, and the medical services available in the Springfield area;

2. testifying that they have had discussions regarding the applicable standard of care relevant to the issues presented with other medical providers in the Springfield community or a neighboring community; or

3. testifying that they have visited Springfield, Tennessee or the Hospital.

Here, Dr. Jennifer Casaletto and Mr. Gilpatrick both testified to being familiar with Springfield, Tennessee based on the population size of Springfield (between 20,000 and 30,000), number of beds at the Hospital (approximately 100), and the geographic proximity of Springfield to a major metropolitan area (Nashville 40-minute drive/ 20 to 30 miles from Springfield).[3] Scott Gilpatrick also testified that he had ridden his bicycle through Springfield before.

---

[3] Defendants argue Dr. Casaletto and Scott Gilpatrick also qualify under the locality rule because they practiced in similar communities to that of Springfield, Tennessee, during the year before the alleged negligent act. (Doc. No. 85 at 3-5). However, Defendants concede that neither Dr. Casaletto nor Mr. Gilpatrick have testified to such facts, as required. Tenn. Code Ann. § 29-26-115(a)(1).

Similarly, Dr. Steven Stogner testified to his knowledge of the population size of Springfield, Tennessee (between 15,000 and 20,000) and the number of beds at the Hospital (109). Dr. Stogner also testified that he has been to Springfield, Tennessee during a trip to Knoxville and while driving around in north Tennessee, vacationing with his family. In his affidavit, filed on August 5, 2024, Dr. Stogner testified that, in December 2021, he practiced in Picayune, Mississippi, a community of similar population size to Springfield, Tennessee, at hospital with a similar number of beds (95) to the Hospital in Springfield. (*See* Doc. No. 58-1).

Upon review of the parties' motions and related filings, including the deposition transcripts of Dr. Casaletto, Mr. Gilpatrick, and Dr. Stogner, the Court finds that they have each demonstrated familiarity with the medical community of Springfield, Tennessee, or a similar community, such that they each satisfy the "locality requirement" of subsection (a) of Section 29-26-115.

## C. Federal Rule of Civil Procedure 26(a)(2)

Plaintiff also moves to exclude Defendants' expert testimony on the basis that defense counsel prepared their written reports for them in violation of Rule 26(a)(2). For support, Plaintiff cites to all three written reports as having identical factual summaries and listing the same documents as reviewed and submits that the Casaletto and Gilpatrick reports are substantively identical in their proffered opinions, containing only stylistic and formatting differences. (*See* Doc. No. 82-1 at 1-6, 9-12).

Rule 26(a)(2) states that expert testimony "must be accompanied by a written report—*prepared and signed by the witness*." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Although "[a] party's attorney can reduce an expert's oral opinion to writing so long as the report reflects the actual views of the expert," *United States v. Kalymon*, 541 F.3d 624, 638 (6th Cir. 2008), "[c]reating an expert's opinion and then asking the purported expert to sign it does not comply with

the rule's requirement." J*ames T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. CIV.A. 5:11-374-DCR, 2014 WL 1744848, at *6 (E.D. Ky. Apr. 30, 2014).

Defense counsel filed an affidavit stating that he had numerous conversations with each of the experts related to their opinions and that he worked closely with each expert in preparing Defendants' expert disclosures and reports. (Doc. No. 85-1 ¶¶ 1-4). Defense counsel further states through his affidavit that he drafted the expert witness statements based on his conversations with each of them and the opinions they relayed to him, and then sent each of the expert witness statements to the experts for their review and finalization. (*Id*. ¶ 5). Following their review of the statements, defense counsel submits that he held phone calls with each of the experts to go over the draft expert witness statements and that he made changes to the reports based on the input from each expert witness. (*Id*. ¶ 6).

Here, while the preliminary components of the three reports are similar in format and factual content, there is no evidence in the record suggesting that defense counsel created the opinions of the defense experts out of whole cloth and then asked them to merely sign the report. Rather, defense counsel's affidavit affirms that he prepared the expert reports based on the opinions conveyed to him during his conversations with the experts. Accordingly, the Court does not find that Defendants have violated Rule 26(a)(2).

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

9

Case 3:22-cv-00718 Document 105 Filed 01/08/25 Page 9 of 9 PageID #: 1089