IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ASHLEY HUDDLESTON,                        )
                                          )
    Plaintiff,                            )
                                          )
v.                                        )          NO. 3:22-cv-00718
                                          )
SPRINGFIELD HEALTH SERVICES,              )          JUDGE CAMPBELL
LLC d/b/a TRISTAR NORTHCREST              )          MAGISTRATE JUDGE HOLMES
MEDICAL CENTER, et al.,                   )
                                          )
    Defendants.                           )

## MEMORANDUM

Pending before the Court is Defendants' motion to exclude testimony of Plaintiff's expert David Wiggins, M.D. (Doc. No. 77), Plaintiff's response (Doc. No. 91), and Defendants' reply (Doc. No. 95). Through the motion, Defendants argue Dr. Wiggins must be excluded under Tennessee's locality rule because he testified that he had not been to Springfield, Tennessee. Defendants also contend that Plaintiff did not disclose that Dr. Wiggins would testify on the locality rule. For the reasons discussed below, the motion (Doc. No. 77) will be **DENIED**.

## I.      BACKGROUND

This is a medical negligence/healthcare liability case arising from medical care Plaintiff received at TriStar Northcrest Hospital (the "Hospital") in Springfield, Tennessee in December 2021. Plaintiff was born with a genetic condition called muscular dystrophy, which required her to be in a wheelchair and utilize a tracheostomy since age 11.

On December 25, 2021, at around 2:36 p.m., Plaintiff presented to the Hospital with low oxygen, shortness of breath, and a history of muscular dystrophy requiring tracheostomy. Approximately an hour later, Plaintiff had a chest x-ray taken, which was normal. At some point,

Plaintiff complained of low back pain. A physician's assistant in the emergency room, Defendant Samantha Stephens, ordered and administered 0.5 milligrams of Dilaudid to Plaintiff for her back pain. Five minutes later, Plaintiff was in cardiac arrest and CPR was initiated. Emergency room physician and supervising physician of Stephens, Defendant James Nell, ordered Narcan, and Plaintiff was alert soon thereafter.

Chest x-rays taken after Plaintiff received CPR showed a pneumothorax (collapsed lung). Plaintiff had a chest tube inserted and was flown by helicopter to St. Thomas Hospital, where she stayed until January 22, 2022. She was transferred to a different hospital, where she stayed until March 3, 2022, after which she received treatment at home until April 4, 2022.

Plaintiff brings this case against Defendants Samantha Stephens, P.A., and James Nell, M.D. under Tennessee Code Annotated Section 29-26-115 for their alleged negligence in providing her medical care on December 25, 2021. (Doc. No. 1).[1] Specifically, Plaintiff claims Defendants negligently ordered and administered Dilaudid, which proximately caused her respiratory arrest, cardiac arrest and subsequent pneumothorax, pain/suffering, and long-term hospitalization.

## II.    STANDARD OF REVIEW

State law determines expert witness competency in health care liability cases, and federal law determines whether a witness is qualified to testify as an expert. *See Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002). "Thus, if a witness is deemed competent to testify to the substantive issue in the case, such as the standard of care, his or her testimony should then be screened by Rule 702 to determine if it is otherwise admissible expert testimony." *Id.* at 292.

---

[1]    Defendants Springfield Health Services, LLC d/b/a TriStar Northcrest Medical Center, Kimberly Rice, APRN, and Rebekah Kollar, M.D. were dismissed from this action in 2024. (*See* Doc. Nos. 46, 48).

2

### III. LAW

Federal Rule of Evidence 702 governs the admissibility of an expert witness's testimony at trial. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he trial judge has discretion in determining whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 453 (6th Cir. 2013) (quotation omitted). The Court's task is to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. In *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court extended *Daubert* to nonscientific expert testimony, requiring that, "where such testimony's factual basis, data, principles, methods, or their application" are called sufficiently into question, the trial judge must determine whether the testimony has "a reliable basis in the knowledge and experience of [the relevant] discipline." *Kumho Tire*, 526 U.S. at 149.

However, the court will not exclude expert testimony "merely because the factual bases for an expert's opinion are weak." *Daniels v. Erie Ins. Grp.*, 291 F. Supp. 3d 835, 840 (M.D. Tenn.

2017) (quoting *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012)). "Indeed, rejection of expert testimony is the exception rather than the rule—the gatekeeping function established by *Daubert* was never intended to serve as a replacement for the adversary system." *Id.* (internal quotation marks and citation omitted). Rule 702 does not "require anything approaching absolute certainty." *Tamaraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010) (citing *Daubert*, 509 U.S. at 590). Under *Daubert*, experts are "permitted wide latitude in their opinions, including those not based on firsthand knowledge, so long as the expert's opinion has a reliable basis in the knowledge and experience of the discipline." *Dilts v. United Grp. Servs., LLC*, 500 F. App'x 440, 445 (6th Cir. 2012) (quoting *Daubert*, 509 U.S. at 592).

## IV. ANALYSIS

Defendants seek to exclude Dr. Wiggins for failure to comply with the "locality requirement" of subsection (a)(1) of Section 29–26–115.[2] As only standard of care opinions are subject to the locality rule, Defendants' motion will be denied to the extent they seek to exclude causation opinions based on a failure to comply with subsection (a)(1).

To satisfy this "locality requirement," an expert witness may show either that they are "familiar" with the relevant medical community or that they are familiar with a "similar" medical community:

> A claimant is required to prove the "[t]he recognized standard of acceptable professional practice ... in the community in which the defendant practices or in a similar community." Tenn.Code Ann. § 29–26–115(a)(1). The medical expert or experts used by the claimant to satisfy this requirement must demonstrate some familiarity with the medical community in which the defendant practices, or a similar community, in order for the expert's testimony

---

[2]    The Sixth Circuit considered the interaction between Tennessee's locality rule and Rule 702 in medical negligence/health care liability cases in *Gales on behalf of Ranson v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 91 F.4th 433 (6th Cir. 2024), concluding that "a proffered witness in a Tennessee medical malpractice action who is unfamiliar with the relevant medical standards cannot testify as an expert because his opinion will not help the fact finder determine a fact at issue in the case." 91 F.4th 433, 436.

4

> to be admissible under Rules 702 and 703. Generally, a competent
> expert's testimony that he or she has reviewed and is familiar with
> pertinent statistical information such as community size, hospital
> size, the number and type of medical facilities in the community,
> and medical services or specialized practices available in the area;
> has had discussions with other medical providers in the pertinent
> community or a neighboring one regarding the applicable standard
> of care relevant to the issues presented; or has visited the community
> or hospital where the defendant practices, will be sufficient to
> establish the expert's testimony as admissible.

*Shipley v. Williams*, 350 S.W.3d 527, 554 (Tenn. 2011). Thus, a competent expert may demonstrate familiarity with the medical community in which the defendant practices – here Springfield, Tennessee – or a similar community by:

1. testifying that they have reviewed and become familiar with pertinent information, such as the size of Springfield's community and hospital, the number and type of medical facilities in Springfield, and the medical services available in the Springfield area;

2. testifying that they have had discussions regarding the applicable standard of care relevant to the issues presented with other medical providers in the Springfield community or a neighboring community; or

3. testifying that they have visited Springfield, Tennessee or the Hospital.

Here, Dr. Wiggins has demonstrated familiarity with the Springfield Tennessee medical community by testifying that he has: (1) reviewed and become familiar with the size of Springfield's community and the medical services available there; and (2) had discussions regarding the applicable standard of care relevant to the issues in this case with another medical provider in a neighboring community who also frequently visits the Hospital and Springfield, Tennessee. (Doc. Nos. 52-1, 91-1, 91-2). Dr. Wiggins testified that, in 2021, the Hospital was similar in bed-size and services offered to other medical facilities he had worked in and that he was aware that the Hospital was a 109-bed hospital that offered services such as 24-hour emergency room, cardiac, and orthopedic care. (Doc. Nos. 52-1, 91-1). Dr. Wiggins has also testified that his home practice is in Thomasville, North Carolina, a community with a population

of approximately 27,000 people, which is similar in size to Springfield, Tennessee. (*See id*.). Additionally, Dr. Wiggins has provided sworn testimony that he has had discussions regarding the Springfield, Tennessee medical community and local standard of care with Dr. George Thomas, a medical provider in Bowling Green, Kentucky who has visited the Hospital and is familiar with the Springfield community. (Doc. No. 52-1 ¶¶ 4-7).

Upon review of Defendants' motion and related filings, including the deposition transcript of Dr. Wiggins and his sworn affidavit, the Court finds that Dr. Wiggins has demonstrated familiarity with the medical community of Springfield, Tennessee and a similar community, such that he satisfies the "locality requirement" of subsection (a) of Section 29-26-115.

Dr. Wiggins has not provided contradictory testimony as to his professional experience or the information he has learned about the Springfield, Tennessee medical community and population size. Plaintiff disclosed Dr. Wiggins as an expert who would be offering his opinions on the standard of care, which necessarily includes his opinions on the locality rule under Tennessee law. Thus, this is not a situation where Defendants can claim surprise that Dr. Wiggins would be offering such opinions. Moreover, Defendants may file a motion with the Magistrate Judge to reopen discovery for the purpose of deposing Dr. Wiggins on his conversation with Dr. Thomas if they are so inclined. (*See* Doc. No. 78 at 10 n.6).

An appropriate Order shall enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE